**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| TIMOTHY GARDNER, TECK ELECTRIC, LLC, and PETER STRICKLAND, | CIVIL ACTION FILE NO.: 2:24-cv-00011-LGW-BWC |
|     Plaintiffs, | |
| v. | |
| STEPHEN JESSUP, individually and in official capacity as Sheriff of McIntosh County, | **JURY TRIAL DEMANDED** |
|     Defendant. | |

**VERIFIED SECOND AMENDED COMPLAINT**

COME NOW, Plaintiffs Timothy Gardner ("Mr. Gardner"), Teck Electric, LLC ("Teck Electric"), and Peter Strickland ("Mr. Strickland") (collectively, the "Plaintiffs") and file this Verified Second Amended Complaint[1] against Defendant Stephen Jessup ("Sheriff Jessup" or "Defendant") individually and in official capacity as Sheriff of McIntosh County, showing this Honorable Court as follows:

## NATURE OF THE ACTION

1.

Defendant Sheriff Jessup's history of infringing on constituents' constitutional rights is well-documented.[2]

---

[1] Plaintiffs amend their Complaint pursuant to the Court's June 5, 2024 Order.
[2] Open government: What happened in McIntosh County - The Current (thecurrentga.org); McIntosh officials respond to complaints of open meetings violations, cite safety concerns - The Current (thecurrentga.org).

2.

Plaintiffs Timothy Gardner, Teck Electric, LLC, and Peter Strickland bring this lawsuit against Sheriff Jessup to hold him accountable for abusing his position of power as the Sheriff of McIntosh County to infringe on Mr. Gardner's constitutional right to candidacy and Mr. Strickland's fundamental right to vote. Mr. Gardner also brings this suit to hold Sheriff Jessup accountable for the defamatory statements that Sheriff Jessup perpetuated about him and for Sheriff Jessup's wrongful interference in Mr. Gardner and Teck Electric's business and contractual relations.

3.

In 2022, Mr. Gardner announced his candidacy for the District Five – McIntosh County Commissioner seat.

4.

After learning that Mr. Gardner considered running against Sheriff Jessup's friend, Davis Poole Jr. ("Mr. Poole"), Sheriff Jessup began intentionally interfering with Mr. Gardner's prospect of candidacy.

5.

Sheriff Jessup spread defamatory statements about Mr. Gardner by telling countless McIntosh County constituents that Mr. Gardner is a drug dealer and/or is the second largest drug dealer in McIntosh County (the "Defamatory Statements").

6.

Sheriff Jessup also threatened and intimidated numerous McIntosh County constituents to secure votes for Mr. Poole. For example, when Mr. Strickland stated that he planned to vote for

Mr. Gardner, Sheriff Jessup intimidated him by insinuating that he would "keep a special eye on him" if he did not vote for Mr. Poole.

7.

The Georgia State Ethics Commission previously fined Sheriff Jessup after he pled guilty to committing an ethics violation in connection with his support of Mr. Poole's candidacy.[3] *See* attached as **Exhibit "A."** Sheriff Jessup pled guilty to violating O.C.G.A. § 21-5-30.2(b) because he contributed property of a public agency to a campaign for public office. *Id.* Specifically, Sheriff Jessup drove Mr. Poole around McIntosh County in his county-owned vehicle to allow Mr. Poole to meet with citizens and discuss his candidacy. *Id.* at p. 1. On one of those occasions, Sheriff Jessup "facilitated the use of a county owned maintenance barn for Mr. Poole to meet with approximately ten citizens to discuss his candidacy." *Id.*

8.

Sheriff Jessup is liable for constitutional violations committed by him against Plaintiffs, which include his complete disregard of Mr. Gardner's constitutional right to candidacy and Mr. Strickland's fundamental right to vote.

**<u>RENEWAL ACTION AS TO PLAINTIFF TIMOTHY GARDNER</u>**

9.

This is a valid renewal action pursuant to O.C.G.A. § 9-2-61.[4]

---

[3] 3 Coastal Georgia politicians cited for ethics violations - The Current (thecurrentga.org); Ethics Fines Span Parties - The Current (thecurrentga.org).
[4] Plaintiffs request that the Court take judicial notice of the State Court Action and all the documents filed by the parties therein.

3

10.

The original action ("State Court Action") was filed in the Superior Court of McIntosh County on September 8, 2023 (Civil Action No. SUV2023000128). *See* attached as **Exhibit** "**B**."

11.

This case is substantially the same both as to the causes of action and as to the essential parties in the State Court Action.

12.

Mr. Gardner properly served Defendant within the statute of limitations, and Mr. Gardner is entitled to renew the State Court Action against Defendant. Alternatively, Mr. Gardner exercised the greatest possible diligence and/or acted in a reasonable and diligent manner in attempting to serve the Defendant with the Summons and Verified Complaint in the State Court Action. The State Court Action was not void when Mr. Gardner voluntarily dismissed it *without prejudice* and, thus, was such a valid action as may be renewed under O.C.G.A. § 9-2-61.

13.

Within five days of filing the Summons and Verified Complaint, Mr. Gardner retained a process server to coordinate service on Defendant.

14.

Because McIntosh County requires an appointment of a special process server, Mr. Gardner timely prepared his Motion for the Appointment of a Special Process Server and provided the corresponding Affidavit of Special Process Server to the process server's point of contact. After receiving a signed Affidavit of Special Process Server, Mr. Gardner filed his Motion for the Appointment of a Special Process Server that same day.

15.

Once the Court granted the Motion for the Appointment of a Special Process Server, the process server made eight attempts at three different addresses to serve Defendant with the Summons and Complaint.

16.

When Mr. Gardner was unable to successfully serve Defendant with the Summons and Verified Complaint, Mr. Gardner timely filed a Motion Requesting Order for Service by Publication. The Motion Requesting Order for Service by Publication was not immediately ruled upon because four judges entered orders recusing themselves in the State Court Action.

17.

Before a senior judge was assigned to the State Court Action and had the opportunity to rule on the Motion Requesting Order for Service by Publication, Defendant made an appearance by opposing the Motion Requesting Order for Service by Publication.

18.

Within 24 hours of receiving notice of Defendant's response opposing the Motion Requesting Order for Service by Publication, Mr. Gardner's counsel reached out to Defendant's counsel and asked if they would acknowledge service.

19.

That same day, Defendant's counsel informed Mr. Gardner's counsel that they would discuss with Defendant whether he will acknowledge service of the Summons and Verified Complaint and would provide an answer to Mr. Gardner's counsel within five days at the latest. Five days later, Defendant's counsel agreed to acknowledge service and, that same day, Mr. Gardner's counsel provided consent to file the acknowledgement of service.

20.

After receiving consent to file the acknowledgment, Defendant filed his Acknowledgment of Service three days later.

21.

After Defendant acknowledged service in the State Court Action, Mr. Gardner voluntarily dismissed the case *without prejudice* on January 19, 2024.

22.

Mr. Gardner renewed the State Court Action in this Court on January 19, 2024.

23.

Pursuant to O.C.G.A. § 9-2-61, Mr. Gardner is entitled to refile this suit within six months of the dismissal date.

24.

Mr. Gardner paid any and all costs from the dismissed action and all other conditions precedent have been met.

**PARTIES, JURISDICTION, & VENUE**

25.

Plaintiff Timothy Gardner is an individual resident of McIntosh County in the State of Georgia. He has acted as a representative and agent of Teck Electric, LLC with respect to the matters described herein.

26.

Plaintiff Teck Electric, LLC is a Georgia limited liability company with its principal office address and registered agent located at 6635 GA Hwy 251, Townsend, Georgia 31331, McIntosh

County. Timothy Gardner is the sole owner and member of Teck Electric, LLC and the residents of McIntosh County know that Teck Electric, LLC is his business.

27.

Plaintiff Peter Strickland is an individual resident of McIntosh County and voter in the State of Georgia.

28.

Defendant Stephen Jessup is a resident of McIntosh County in the State of Georgia, where he may be served with process.

29.

This Court has federal question jurisdiction under 28 U.S.C. § 1331.

30.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Defendant is a resident of McIntosh County and all the events giving rise to Plaintiffs' claims occurred in McIntosh County.

**FACTUAL BACKGROUND**

31.

In an effort to serve his community, Mr. Gardner ran for the District Five – McIntosh County Commissioner seat in May 2022 (the "Primary Election").

32.

Mr. Gardner was one of three candidates on the Republican ticket, which included him, Stuart Peterseim, and Davis Poole, Jr.

33.

Sheriff Jessup and Mr. Poole are friends, so Sheriff Jessup had a personal interest in Mr. Poole winning the County Commissioner seat and had a personal hostility towards Mr. Gardner.

34.

After Mr. Gardner announced his candidacy, Sheriff Jessup affirmed and manifested his distaste towards Mr. Gardner.

35.

To aid Mr. Poole's campaign, Sheriff Jessup undermined Mr. Gardner's credibility by telling numerous McIntosh County constituents that Mr. Gardner is a drug dealer and/or is the second largest drug dealer in McIntosh County. *See* attached as **Exhibit** "**C**." These defamatory statements continued after the campaign into February 2023 and, discovery will show, continue into today.

36.

While on duty and wearing the McIntosh County Sheriff emblem on his clothing, Sheriff Jessup went door-to-door to residences located in McIntosh County and told constituents to vote for Mr. Poole. Sheriff Jessup also told constituents not to vote for Mr. Gardner because he is a drug dealer and/or is the second largest drug dealer in McIntosh County, thus spreading the Defamatory Statements. These defamatory statements continued after the campaign into February 2023 and, discovery will show, continue into today.

37.

Sheriff Jessup also told Mr. Strickland not to vote for Mr. Gardner because he is the largest drug dealer in McIntosh County.

38.

On September 17, 2022, The Brunswick News ran an article affirming the Defamatory Statements made by Sheriff Jessup about Mr. Gardner. Specifically, Sheriff Jessup stated that "'[Mr. Gardner] was tied to a drug dealer and is still tied to him.'" *See* attached as **Exhibit** "**D**."

39.

Sheriff Jessup continuously made the Defamatory Statements through and including February 2023. Discovery will show that Sheriff Jessup continues to perpetuate the Defamatory Statements through the filing of this Verified Complaint.

40.

While on duty, Sheriff Jessup also drove Mr. Poole in his county-owned vehicle throughout McIntosh County to promote Mr. Poole's candidacy. **Exhibit A**.

41.

While on duty and wearing the McIntosh County Sheriff emblem on his clothing, Sheriff Jessup escorted Mr. Poole into government buildings located in McIntosh County to promote Mr. Poole's candidacy. Sheriff Jessup also told government employees not to vote for Mr. Gardner because he is a drug dealer and/or is the second largest drug dealer in McIntosh County, thus spreading the Defamatory Statements. Sheriff Jessup plead guilty to this improper conduct with the Georgia Transparency and Campaign Finance Commission.

42.

Sheriff Jessup told police officers to promote Mr. Poole's candidacy by directing them to drive throughout McIntosh County, while on duty, and tell constituents to vote for Mr. Poole and not to vote for Mr. Gardner.

43.

Sheriff Jessup stood outside of a voting precinct on the date of the Primary Election and, while on duty and wearing the McIntosh County Sheriff emblem, advocated for Mr. Poole's candidacy. This includes, but is not limited to, holding a sign with Mr. Poole's name on it.

44.

Sheriff Jessup stood outside of a voting precinct on the date of the runoff election and, while on duty and wearing the McIntosh County Sheriff emblem, advocated for Mr. Poole's candidacy. This includes, but is not limited to, holding a sign with Mr. Poole's name on it.

45.

Sheriff Jessup intimidated McIntosh County constituents by threatening negative consequences on them and/or their families if the constituents did not vote for Mr. Poole.

46.

Sheriff Jessup insinuated to Mr. Strickland that if he voted for Mr. Gardner, rather than Mr. Poole, Sheriff Jessup would "keep a special eye on him." Sheriff Jessup's actions intimidated Mr. Strickland and put him in fear of retaliation.

47.

As a result of Sheriff Jessup's threats and/or repeating the Defamatory Statements to McIntosh County constituents, McIntosh County constituents voted for Mr. Poole instead of voting for Mr. Gardner.

48.

As a result of Sheriff Jessup's threats, McIntosh County constituents refrained from voting in the Primary Election and/or the runoff election.

49.

As a result of Sheriff Jessup's Defamatory Statements, numerous customers have not hired Mr. Gardner and/or his company, Teck Electric.

50.

As one example, from approximately February 2022 – April 2022, Richard E. Braun, Jr. ("Mr. Braun"), City Manager for Darien, Georgia promised Mr. Gardner that he would hire Mr. Gardner and/or Teck Electric to be the new City Building Inspector, Maintenance Supervisor, and Electrician ("City Contract"). Multiple McIntosh County employees witnessed this.

51.

Mr. Braun told Mr. Gardner that it was unnecessary for him and/or Teck Electric to apply for the City Contract because Mr. Braun was going to award the City Contract to him and/or Teck Electric.

52.

In accordance with proper procedure, Mr. Gardner and/or Teck Electric still filed an application on or about July 2022.

53.

At all times, Sheriff Jessup was not a party to the City Contract.

54.

Sheriff Jessup told Mr. Braun not to award the City Contract to Mr. Gardner and/or Teck Electric and repeated the Defamatory Statements to Mr. Braun.

55.

Mr. Gardner was not awarded the City Contract due to Sheriff Jessup's interference.

56.

Sheriff Jessup's Defamatory Statements that Mr. Gardner was a drug dealer and is tied to a drug dealer are false, as Mr. Gardner has never dealt drugs, been tied to a drug dealer, or been convicted of a drug offense.

57.

Despite the falsity of his statements, Sheriff Jessup continued to defame Mr. Gardner during and after the Primary Election, even though Mr. Poole won the Republican ticket and, ultimately, the District Five County Commissioner seat.

58.

Sheriff Jessup's actions caused Mr. Gardner and Teck Electric significant damages, including, but not limited to, presumed, actual, special, and punitive damages.

59.

Sheriff Jessup's actions threaten Mr. Strickland's right to vote for the candidate of his choice.

## **COUNT I: DEFAMATION**

*(By Mr. Gardner Against Sheriff Jessup in His Individual Capacity)*

60.

Plaintiffs hereby incorporate paragraphs 1-59 as if fully set forth herein.

61.

"Under Georgia law, a claim for defamation has four elements that must be met: (1) a false statement concerning the plaintiff; (2) unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *ACLU, Inc. v. Zeh*, 312 Ga. 647, 650 (2021).

62.

As to the first element, Sheriff Jessup made a false statement about Mr. Gardner when he told Mr. Strickland and McIntosh County constituents that Mr. Gardner is a drug dealer and/or is the second largest drug dealer in McIntosh County because Sheriff Jessup's Defamatory Statements that Mr. Gardner was a drug dealer and is tied to a drug dealer are false, as Mr. Gardner has never dealt drugs, been tied to a drug dealer, or been convicted of a drug offense.

63.

As to the second element, O.C.G.A. § 51-5-7 sets forth what constitutes privileged communications.

64.

Sheriff Jessup's Defamatory Statements were uttered to third parties without privilege, as the Defamatory Statements were not: (1) made in good faith in the performance of a public duty; (2) made in good faith in the performance of a legal or moral private duty; (3) made with a good faith intent by Sheriff Jessup to protect his interest in a matter in which he is concerned; (4) made in good faith as part of an act in furtherance of Sheriff Jessup's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern; (5) fair and honest reports of the proceedings of legislative or judicial bodies; (6) fair and honest reports of court proceedings; (7) comments of counsel, fairly made, on the circumstances of a case in which he or she is involved and on the conduct of the parties in connection therewith; (8) truthful reports of information received from any arresting officer or police authorities; and (9) comments upon the acts of public men or public women in their public capacity and with reference thereto. *See* O.C.G.A. § 51-5-7.

65.

As to the third element, Sheriff Jessup negligently made the Defamatory Statements before and after the Primary Election and runoff election to Mr. Strickland, numerous McIntosh County constituents, and The Brunswick News, all of whom understood the clear meaning of the words spoken.

66.

Even more, Sheriff Jessup intentionally and maliciously made the Defamatory Statements to Mr. Strickland, numerous McIntosh County constituents, and The Brunswick News, all of whom understood the clear meaning of the words spoken. Sheriff Jessup uttered with actual malice that Mr. Gardner is a drug dealer and is tied to a drug dealer.

67.

Sheriff Jessup's Defamatory Statements are false and malicious and made with ill will or malicious intent towards Mr. Gardner, with knowledge that his statements were false or made with reckless disregard to the truth of the statements, because as the McIntosh County Sheriff, Defendant is in the best position to know whether a resident is engaged in criminal activity, and Defendant knew that Mr. Gardner was not.

68.

Sheriff Jessup's false and defamatory statements were disparaging and caused damage to Mr. Gardner and to Mr. Gardner's name, character, and reputation, which flows naturally from the Defamatory Statements.

69.

Sheriff Jessup's actions constitute slander, and as such, Mr. Gardner is entitled to special damages. Specifically, Mr. Gardner has incurred special damages in an amount to be proven at

trial. Accordingly, Mr. Gardner is further entitled to such additional special damages as to be shown by the evidence presented at trial.

## COUNT II: DEFAMATION PER SE

*(By Mr. Gardner and Teck Electric Against Sheriff Jessup in His Individual Capacity)*

70.

Plaintiffs hereby incorporate paragraphs 1-69 as if fully set forth herein.

71.

Slander includes "[i]mputing to another a crime punishable by law[.]" O.C.G.A. § 51-5-4(a)(1).

72.

Slander includes "[m]aking charges against another in reference to his trade, office, or profession, calculated to injure him therein[.]" O.C.G.A. § 51-5-4(a)(3).

73.

"For an oral statement to be slanderous as imputing a crime, it must give 'the impression that the crime in question is being charged, couched in language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance.'" *Taylor v. Calvary Baptist Temple*, 279 Ga. App. 71, 73 (2006).

74.

"To be slander per se, the words are those which are recognized as injurious on their face – without the aid of extrinsic proof." *Cottrell v. Smith*, 299 Ga. 517, 523 (2016).

75.

When the defamation is defamation per se, a plaintiff "does not require proof of special damages; rather, damages are inferred." *Zeh*, 312 Ga. at footnote 15.

76.

The Defamatory Statements constitute slander per se because Sheriff Jessup imputed to Mr. Gardner unethical, unlawful, and/or criminal conduct, which injured Mr. Gardner's reputation, when he told Mr. Strickland and McIntosh County constituents that Mr. Gardner is a drug dealer and/or is the second largest drug dealer in McIntosh County.

77.

The Defamatory Statements constitute slander per se because Sheriff Jessup made charges against Mr. Gardner and Teck Electric in reference to their profession. Sheriff Jessup's allegations that Teck Electric's sole owner and member, Mr. Gardner, is a drug dealer and/or is the second largest drug dealer in McIntosh County undermines their business reputations due to implicitly and/or explicitly challenging whether Teck Electric operates legally.

78.

The Defamatory Statements are false, as Mr. Gardner, personally and professionally, has never dealt drugs, been tied to a drug dealer, or been convicted of a drug offense.

79.

Sheriff Jessup's Defamatory Statements were uttered to third parties without privilege, as the Defamatory Statements do not meet the privileged communications provided under O.C.G.A. § 51-5-7.

80.

Sheriff Jessup negligently made the Defamatory Statements before and after the Primary Election and runoff election to Mr. Strickland, numerous McIntosh County constituents, and The Brunswick News, all of whom understood the clear meaning of the words spoken.

81.

Even more, Sheriff Jessup intentionally and maliciously made false and defamatory statements to Mr. Strickland, numerous McIntosh County constituents and The Brunswick News, all of whom understood the clear meaning of the words spoken. Sheriff Jessup uttered with actual malice that Mr. Gardner was a drug dealer and is tied to a drug dealer.

82.

Sheriff Jessup's statements are false and malicious and made with ill will or malicious intent towards Mr. Gardner and Teck Electric, with knowledge that his statements were false or made with reckless disregard to the truth of the statements, because as the McIntosh County Sheriff, Defendant is in the best position to know whether a resident is engaged in criminal activity, and Defendant knew that Mr. Gardner and Teck Electric were not.

83.

Because the Defamatory Statements constitute defamation per se, damages to Mr. Gardner and Teck Electric are presumed as a matter of law.

84.

Sheriff Jessup's false and defamatory statements caused Mr. Gardner and Teck Electric to suffer damages, including impairment of reputation and loss of standing in the community, as well as the loss of Mr. Gardner's political race.

## **COUNT III: PUNITIVE DAMAGES**

*(By All Plaintiffs Against Sheriff Jessup in Both His Official and Individual Capacities)*

85.

Plaintiffs hereby incorporate paragraphs 1-84 as if fully set forth herein.

86.

Sheriff Jessup's actions in making the Defamatory Statements show willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences, thereby entitling Mr. Gardner to an award of punitive damages against Sheriff Jessup's in an amount to be determined by the trier of fact upon trial of this matter.

## COUNT IV: TORTIOUS INTERFERENCE

*(By Mr. Gardner and Teck Electric Against Sheriff Jessup in His Individual Capacity)*

87.

Plaintiffs hereby incorporate paragraphs 1-86 as if fully set forth herein.

88.

The elements of tortious interference are that "'the defendant: (1) acted improperly and without privilege; (2) acted purposefully and maliciously with the intent to injure; (3) induced a third party not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff some financial injury.'" *Meadow Springs, LLC v. IH Riverdale, LLC*, 323 Ga. App. 478, 480 (2013).

89.

As to element one, Sheriff Jessup acted improperly and without privilege when he interfered with Mr. Gardner's and Teck Electric's business and contractual relations as Sheriff Jessup is not a party to Mr. Gardner's and Teck Electric's business relations and contracts.

90.

For example, Sheriff Jessup interfered with Mr. Gardner's and/or Teck Electric's business and contractual relations with the City of Darien because discovery will reveal that Sheriff Jessup

told Mr. Braun not to award the City Contract to Mr. Gardner and/or Teck Electric and repeated the Defamatory Statements to Mr. Braun.

91.

As to element two, the wrongful conduct of Defendant was knowing, willful, intentional, malicious, reckless, or grossly negligent.

92.

As to element three, because of Sheriff Jessup's interference and repeating the Defamatory Statements, numerous customers have not hired Mr. Gardner and/or Teck Electric.

93.

As one example, Mr. Gardner and/or Teck Electric were not awarded the City Contract and, thus, have been damaged and expects further damage.

94.

As to element four, but for the intentional and unlawful interference by Sheriff Jessup, Mr. Gardner and/or Teck Electric would have received the economic benefit of its business and contractual relations.

95.

Mr. Gardner and/or Teck Electric have suffered and will continue to suffer immediate and irreparable harm as a result of Sheriff Jessup's conduct.

## **COUNT V: VIOLATION of 42 U.S.C. § 1983**

*(By Mr. Gardner Against Sheriff Jessup in Both His Official and Individual Capacities)*

96.

Plaintiffs hereby incorporate paragraphs 1-95 as if fully set forth herein.

97.

42 U.S.C. 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" (emphasis added).

98.

Mr. Gardner ran as a candidate on the Republican ticket to be the District Five – McIntosh County Commissioner.

99.

Mr. Gardner had a constitutional right to run for the District Five – McIntosh County Commissioner seat. *Randall v. Scott*, 610 F.3d 701, 710-12 (11th Cir. 2010); *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981) (recognizing "[t]he [F]irst [A]mendment's protection of the freedom of association and of the rights to run for office, have one's name on the ballot, and present one's views to the electorate"); *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) (holding that the "plaintiff's interest in running for Congress and thereby expressing his political views without interference from state officials…lies at the core of the values protected by the First Amendment").

100.

Sheriff Jessup interfered with Mr. Gardner's right to run for public office by abusing his position of authority as Sheriff of McIntosh County. While on duty and wearing the McIntosh County Sheriff emblem on his clothing, Sheriff Jessup:

(1)     Attempted to threaten and intimidate Mr. Gardner not to run and to drop out of the race by lying about him;

(2)     Knocked on numerous constituents' doors and told them not to vote for Mr. Gardner by falsely telling them that Mr. Gardner is a drug dealer and is the second largest drug dealer in McIntosh County;

(3)     Promoted Mr. Poole's candidacy by driving Mr. Poole through McIntosh County in Sheriff Jessup's county-owned vehicle;

(4)     Escorted Mr. Poole into government buildings located in McIntosh County and required the government employees therein to listen to Sheriff Jessup and Mr. Poole's political speeches promoting Mr. Poole's candidacy; and

(5)     Advocated for Mr. Poole's candidacy outside of voting precincts on election day for the Primary Election and runoff election.

101.

Sheriff Jessup's actions are in violation of the Constitution of the United States.

## COUNT VI: VIOLATION OF SECTION 11(B) OF THE VOTING RIGHTS ACT OF 1965, 52 U.S.C. § 10307(B)

*(By Mr. Strickland Against Sheriff Jessup in Both His Official and Individual Capacities)*

102.

Plaintiffs hereby incorporate paragraphs 1-101 as if fully set forth herein.

103.

Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), provides that:

No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten,

or coerce any person from exercising any powers or duties under section 10303(a), 10305, 10306, or 10308(e) of this title or  section 1973d or 1973g of title 42.

104.

Sheriff Jessup violated Section 11(b) of the Voting Rights Act by taking actions that would intimidate a reasonable voter and, in fact, did intimidate Mr. Strickland.

105.

These actions include, but are not limited to, insinuating negative consequences on Mr. Strickland if he did not vote for Mr. Poole.

106.

Sheriff Jessup's actions had the foreseeable and predictable effect of intimidating Mr. Strickland from exercising his right to vote in the future and causing harm to Mr. Strickland on account of him exercising his right to vote.

107.

Mr. Strickland was and continues to be harmed by Defendant's conduct. Mr. Strickland feared exercising his right to vote in the Primary Election and in the runoff election.

108.

Mr. Strickland has been and will continue to be injured by Sheriff Jessup's unlawful actions unless this Court grants relief.

109.

Sheriff Jessup intimidated other McIntosh County voters.

110.

Mr. Strickland is entitled to a declaration that Sheriff Jessup has violated 11(b) of the Voting Rights Act and an injunction enjoining him and his agents from any further activity which intimidates voters.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following:

a.      Enter an injunction against Sheriff Jessup enjoining him from further falsely attributing to Mr. Gardner and/or Teck Electric unethical, unlawful, and/or criminal conduct;

b.      Find Sheriff Jessup liable for defamation and defamation per se for slandering Mr. Gardner's and/or Teck Electric's reputation;

c.      Find Sheriff Jessup liable for tortious interference for intentionally interfering with Mr. Gardner's and Teck Electric's business and contractual relations;

d.      Find Sheriff Jessup's actions are in violation of 42 U.S.C. § 1983;

e.      Find Sheriff Jessup's actions are in violation of Section 11(b) of the Voting Rights Act;

f.      Award Plaintiffs presumed, actual, special, and punitive damages in an amount to be determined at trial;

g.      A trial by jury of 12 be had;

h.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses;

i.      The Court renders such other and further relief to Plaintiffs that it deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial of all issues properly triable to a jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted this 12th day of June, 2024.

**GREENBERG TRAURIG, LLP**

*/s/ Jake Evans*

Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
P: (678) 553-2100
F: (678) 553-2212
Jake.Evans@gtlaw.com
Mikayla.Mobley@gtlaw.com

Jake Evans
Georgia Bar No. 797018
Mikayla Mobley
Georgia Bar No. 708760

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2024, I served a copy of the within and foregoing **VERIFIED SECOND AMENDED COMPLAINT** upon all parties by filing said document electronically through this Court's CM/ECF system, which will automatically send notification of such filing to the following counsel of record:

Richard K. Strickland, Esq.
rstrickland@brbcsw.com
Emily R. Hancock, Esq.
ehancock@brbsws.com
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
P.O. Box 220
Brunswick, Georgia 31521
*Attorneys for Defendant*

**GREENBERG TRAURIG, LLP**

Terminus 200                                         */s/ Jake Evans*
3333 Piedmont Road NE, Suite 2500        Jake Evans
Atlanta, Georgia 30305                         Georgia Bar No. 797018
P: (678) 553-2100                                Mikayla Mobley
F: (678) 553-2212                                Georgia Bar No. 708760
Jake.Evans@gtlaw.com
Mikayla.Mobley@gtlaw.com                   *Attorneys for Plaintiffs*